**EXHIBIT 1**

**FILED**
April 19, 2022
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| **ASHLEY GOODGION and KENT GOODGION** <br> **Plaintiffs,** <br><br> v. <br><br> **THE DUFRESNE SPENCER GROUP, LLC D/B/A ASHLEY HOMESTORE** <br> **Defendant.** | § § § § § § § § § | **CASE NO. 5:22-CV-00002-C** |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Ashley Goodgion and Kent Goodgion, hereinafter called Plaintiffs, complaining of and about The Dufresne Spencer Group, LLC d/b/a Ashley Homestore, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### I.    PARTIES TO THIS SUIT

1. Plaintiff, Ashley Goodgion, is an individual whose address is 303 Spring Street, Van Horn, Texas, 79855. The last three numbers of Ashley Goodgion's driver's license number are 201. The last three numbers of Ashley Goodgion's social security number are 687.

2. Plaintiff, Kent Goodgion is an individual whose address is 303 Spring Street, Van Horn, Texas, 79855. The last three numbers of Kent Goodgion's driver's license number are 723. The last three numbers of Kent Goodgion's social security number are 356.

3. Defendant The Dufresne Spencer Group, LLC d/b/a Ashley Homestore, is a foreign limited liability company. It has made an appearance in this case.

### II.    STATEMENT ON JURISDICTION

4. This suit involves violations by Defendant under the Tex. Bus. Comm. Code, Texas Theft

Liability Act, and the common law of the State of Texas. This Honorable Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is a civil action between citizens of different states, and the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest.

5. Venue is made proper under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this claim occurred within this District.

### III.   CONDITIONS PRECEDENT

6. Pursuant to Section 17.505(a) of the Texas Business and Commerce Code, Plaintiffs timely notified Defendant of their Deceptive Trade Practices Act Claim at least 60 days before filing suit by letter dated August 10, 2021. **Exhibit A**.

7. All conditions precedent to the filing of this suit and recovery of additional damages and attorney's fees have been performed or have occurred.

8. Any and all other prerequisites to the filing of this suit have been met.

### IV.   FACTS

9. Defendant sells home furniture, décor, and accessories ("Goods" herein) and services to consumers.

10. Defendant owns and operates retail stores for the purpose of selling its Goods and services.

11. Defendant owns and operates a retail store for the purpose of selling its Goods and services located at 5026 Frankford Ave, Lubbock, TX, 79424 (the "Lubbock Store" herein).

12. Plaintiffs viewed floor models of Goods ("Lubbock Goods" herein) at the Lubbock Store.

13. At the Lubbock Store, Plaintiffs encountered Alexander, Defendant's employee and sales representative, while viewing the Lubbock Goods.

14. Alexander told Plaintiffs that Defendant delivered Goods approximately two (2) to six (6)

weeks after the date of purchase.

**15.** On April 9, 2021, Plaintiffs entered into a contract for the purchase and delivery of Goods that consisted of the same item numbers as the Lubbock Goods.

**16.** As shown in Sales Contract No. 101951630 ("Contract") (**Exhibit B**), Plaintiffs agreed to purchase the following Goods:

- **a.** Ashley B267-56, 58, 99 Willowton King Panel Bed
    - **i.** Ashley B267-56 King/Cal King Panel Footboard;
    - **ii.** Ashley B267-58 King/Cal King Panel Headboard; and
    - **iii.** Ashley B267-99 King Panel Rails/Willowton
- **b.** Ashley 31201- 38, 35 Alesandra 2PC Sofa & Loveseat
    - **i.** Ashley 3120138 Sofa/Alesandra/Parchment; and
    - **ii.** Ashley 3120135 Loveseat/Alesandra/Parchment
- **c.** D743-32, 124 (4) Realyn 5PC Ctr Height Dining Set
    - **i.** Four (4) Ashley D743-124 Upholstered Barstool (2/CN)/Realyn; and
    - **ii.** Ashley D743-32 Square DRM Counter EXT Table/Realyn
- **d.** Ashley B267-31 Dresser;
- **e.** Ashley B267-36 Bedroom Mirror;
- **f.** Ashley B267-46 Five Drawer Chest;
- **g.** Two (2) Ashley B267-92 Two Drawer Night Stands;
- **h.** Ashley 3120114 Ottoman;
- **i.** Ashley 3120123 Chair and a Half; and
- **j.** Ashley M67741 King Mattress;

**17.** On a separate sales contract, Plaintiffs agreed to purchase the following Goods:

    **a.**  Two (2) <u>Ashley T637-107</u> Bolanburg Chair Side End Tables;

    **b.**  <u>Ashley T637-3</u> Rectangular End Table Bolanburg;

    **c.**  <u>Ashley D743-60</u> Realyn Dining Server; and

    **d.**  <u>Ashley T637-20</u> Bolanburg Coffee Table with Lift Top;

18. Plaintiffs entered into a financing agreement with ACIMA Financing ("ACIMA" herein) to assist with payment of the Goods itemized in the Contract ("Contract Goods" herein).

19. Pursuant to the financing agreement with ACIMA, Plaintiffs would be required to make payments to ACIMA once Plaintiffs received the Contract Goods.

20. Plaintiffs and ACIMA, on behalf of Plaintiffs, fully paid Defendant six thousand eight hundred forty-five and 91/100 dollars ($6,845.91) for the Contract Goods.

21. The Contract notes that the Ashley Goods would be delivered free of charge:



— *See* **Exhibit B**, p. 1-2

22. The Contract notes the following provisions:

    **a.**  "Delivery includes assembly, set up and removal of all packaging materials."[1]

    **b.**  "**Delivery:** … **We do not allow customer pickups**."[2]

    **c.**  **Warranty/Defects**: … "All Ashley furniture carries a 1-year manufacturer's warranty protecting against any manufacturer defects. We have a team of highly trained service technicians who are available by appointment to attend to any

---

[1] Contract, p. 1, 2 (back of both pages)
[2] Contract, p. 1, 2 (back of both pages) (Emphasis in original).

warranty or defect claims. All technicians are scheduled through our Customer Service Department by calling the numbers listed above. Under the Ashley Furniture Industries Limited Warranties, we reserve the right to repair, or at our option, replace any part or parts found to be needed upon examination from a trained service technician."[3]

23. After Defendant's delivery department failed to call Plaintiffs to schedule a time for delivery, Plaintiffs called Defendant to check on the status of the Ashley Goods and determine if Defendant had a tentative delivery date. Plaintiffs were continually put on hold or hung up on.

24. After complaining to the manager of Lubbock Store, Plaintiffs were able to speak with Alexander. Alexander stated that the Ashley Goods were in the warehouse, and he would personally go to the warehouse on his day off to find the Ashley Goods. Alexander did not contact Plaintiffs again.

25. During this long wait, Plaintiffs lived in a house without furniture. Plaintiffs and their children slept on an air mattress and sat on the floor for meals.

26. Defendant refused to deliver and assemble the Ashley Goods pursuant to the Contract.

27. On or about May 14, 2021, Defendant made some of the Ashley Goods available to Plaintiffs for pickup in Midland, Texas. ("Midland Ashley Goods" herein).

28. Plaintiffs were required to travel approximately three hundred seventy (370) miles round-trip to Midland, Texas.

29. Defendant failed to provide for pickup and refused to deliver and assemble the following Ashley Goods (the "Missing Ashley Goods" herein):

    **a.** <u>Ashley 31201- 38, 35</u> Alesandra 2PC Sofa & Loveseat

        **i.** <u>Ashley 3120138</u> Sofa/Alesandra/Parchment;

---

[3] Contract, p. 1, 2 (back of both pages) (Emphasis from original omitted)
Goodgion v. The Dufresne Spencer Group, LLC; 5:22-CV-00002-C
Plaintiffs' First Amended Complaint                                                                              Page **5** of **19**

      ii.  Ashley 3120135 Loveseat/Alesandra/Parchment;

  b.  Four (4) Ashley D743-124 Upholstered Barstool (2/CN)/Realyn

  c.  Ashley 3120123 Chair and a Half.

30. On May 14, 2021, Service Unit R06 uploaded a signature for Kent Goodgion onto Order by Ashley Furniture (the "Service Order") (**Exhibit C**).



…

— See **Exhibit C**, p. 3-4

31. Kent Goodgion never physically or electronically signed, or authorized anyone to sign, a statement affirming that "I have inspected my merchandise and agree that it has been received in good order unless otherwise noted at time of signature" regarding the *Ashley Goods*.

32. Accordingly, Defendant forged Kent Goodgion's signature on the Service Order.[4]

33. In the Service Order, the four (4) Ashley D743-124 Upholstered Barstool (2/CN)/Realyn (the "Barstools" herein) were listed as delivered.

---

[4] *Clifton v. Anthony*, 401 F. Supp. 2d 686, 691 (E.D. Tex. 2005).
   "'Forge' means to alter, make, complete, execute, or authenticate any writing so that it purports: (I) to be the act of another who did not authorize that act...." Tex. Penal Code § 32.21(a) This definition of forgery apples in civil cases. *See Charter Bank Northwest v. Evanston Ins. Co.*, 791 F.2d 379, 381 (5th Cir.1986) (referring to Tex. Penal Code § 32.21 for the definition of forgery in a civil case governed by Texas law).

| 1 ✓ | ASHLEY D743-124 Upholstered Barstool (2/CN)/Realyn | D743-124 | | 1 | $135.87 |
|---|---|---|---|---|---|
| ■ ✓ | ■■■■■■■■■■■■■■■■■■■ | ■■■ | | ■ | ■■■ |
| ■ ✓ | ■■■■■■■■■■■■■ | ■■■ | | ■ | ■■■ |
| 1 ✓ | ASHLEY D743-124 Upholstered Barstool (2/CN)/Realyn | D743-124 | | 1 | $135.87 |
| 2 ✓ | ASHLEY D743-124 Upholstered Barstool (2/CN)/Realyn | D743-124 | | 2 | $135.87 |

— *See* **Exhibit C**, p. 2

34. In the "Activity" Section of the Service Order, <u>Ashley 3120123,</u> <u>Ashley 3120138</u>, and <u>Ashley 3120135</u> (the "Line-Item Goods" herein) were deleted by Defendant — effectively canceling the order for the Line-Item Goods.

```
On 05/12/2021 at 12:40 PM Line Item ASHLEY 3120123 Chair and a Half deleted by Lucero Gomez
On 05/12/2021 at 12:40 PM Line Item ASHLEY 3120138 Sofa/Alesandra/Parchment deleted by Lucero Gomez
On 05/12/2021 at 12:40 PM Line Item ASHLEY 3120135 Loveseat/Alesandra/Parchment deleted by Lucero Gomez
```

— *See* **Exhibit C**, p. 5

35. Defendant canceled the order for the Line-Item Goods without Plaintiffs' knowledge or consent.

36. Defendant did not report the cancelation of the Line-Item Goods to ACIMA.

37. Defendant notified ACIMA that Plaintiffs received all Contract Goods.

38. While removing the Midland Ashley Goods from its packaging, Plaintiffs discovered that several of the Midland Ashley Goods were damaged.

39. While assembling the Midland Ashley Goods, Plaintiffs discovered that the Midland Ashley Goods were poorly manufactured. The Midland Ashley Goods have continued to deteriorate with time to the point that they release splinters and pieces will constantly fall off.

40. Plaintiffs immediately contacted Defendant via the Customer Service Department to inform Defendant that the Midland Ashley Goods were damaged and poorly manufactured and that Plaintiffs had not received the Missing Ashley Goods.

41. Plaintiffs were often hung up on by Defendant or treated as if it was the first time Plaintiffs

were reporting the issues.

**42.** ACIMA billed Plaintiffs for payments on all Contract Goods.

**43.** Plaintiffs informed ACIMA that they had not received all Contract Goods.

**44.** ACIMA informed Plaintiffs that it would not stop billing Plaintiffs for all Contract Goods unless Defendant informed ACIMA that Plaintiffs did not receive all Contract Goods.

**45.** Plaintiffs asked Defendant to inform ACIMA that they had not received all Contract Goods.

**46.** Defendant did not inform ACIMA that Plaintiffs did not receive all Contract Goods.

**47.** As a result, ACIMA continued to bill Plaintiffs for payments on all Contract Goods.

## V.   CLAIMS FOR RELIEF

**48.** Plaintiffs incorporate by reference all of the allegations, statements, and references alleged as set forth above.

### Claim 1:   Deceptive Trade Practices Act

**49.** For a Deceptive Trade Practices Act ("DTPA") claim under Texas law, a plaintiff must show (1) the plaintiff was a consumer; (2) the defendant (a) engaged in "false, misleading, or deceptive acts or practices," (b) breached an express or implied warranty, or (c) engaged in an unconscionable action or course of action; and (3) the (a) "false, misleading, or deceptive acts or practices," (b) breach of an express or implied warranty, or (c) unconscionable action or course of action was a producing cause of the plaintiff's injury.[5]

**50.** "False, misleading, or deceptive acts or practices" includes, but is not limited to, (1)

---

[5] *See Hutchens v. Smith & Nephew, Inc.,* No. 3:13-CV-4979-B, 2014 WL 4177306, at *7 (N.D. Tex. Aug. 22, 2014) *citing Windle v. Synthes USA Products, LLC*, No. 3:11–CV–2591–D, 2012 WL 1252550, at *4 (N.D.Tex. Apr.13, 2012) (*citing Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996)); *see also Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995); Tex. Bus. & Comm. Code § 17.50(a).

representing that goods or services are of a particular standard, quality, or grade and (2) representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve.[6] "Unconscionable action or course of action" means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.[7]

### A. DTPA Statement 1

**51.** The Plaintiffs were consumers because they were individuals who acquired the Midland Ashley Goods by purchase.

**52.** Defendant represented that Contract Goods were of a particular standard, quality, or grade; namely, Defendant represented that the Contract Goods were a similar standard, quality, or grade to the Lubbock Goods - durable and not damaged. Since the Midland Ashley Goods were poorly manufactured and damaged, Plaintiffs relied on the representation to their detriment.

**53.** Defendant's representation constituted a producing cause of Plaintiffs' damages because Plaintiffs relied on the representation to determine whether to purchase Contract Goods from Defendant.

### B. DTPA Statement 2

**54.** The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

**55.** Defendant represented that its warranty involved service technicians that would attend to **any** warranty or defect claims — which it does not have or involve. Since the service technicians did not attend to Plaintiffs' warranty and defect claims, Plaintiffs relied on the representation to

---

[6] See Tex. Bus. & Comm. Code § 17.46(7),(20).
[7] Tex. Bus. & Comm. Code § 17.45(5).

their detriment.

56. Defendant's representation constituted a producing cause of Plaintiffs' damages because Plaintiffs were forced to retain damaged and poorly manufactured furniture.

### C. DTPA Statement 3

57. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

58. Defendant breached the express warranty by failing to provide service technicians that would attend to any warranty or defect claims.

59. The acts constituted a producing cause of the consumer's damages because Plaintiffs were forced to retain damaged and poorly manufactured furniture.

### D. DTPA Statement 4

60. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

61. Defendant took advantage of Plaintiffs' lack of knowledge and/or experience to a grossly unfair degree by refusing to deliver the Contract Goods. The act was to Plaintiffs' detriment because Plaintiffs' purchase of the Contract Goods was not refundable.

62. The unconscionable action constituted a producing cause of Plaintiffs' damages because Plaintiffs were led to believe they had no recourse but to pick up the Midland Goods.

### E. DTPA Statement 5

63. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

64. Defendant took advantage of Plaintiffs' lack of knowledge and/or experience to a grossly unfair degree by refusing to assemble the Contract Goods. The act was to Plaintiffs' detriment

because Plaintiffs' purchase of the Contract Goods was not refundable.

65. The unconscionable action constituted a producing cause of Plaintiffs' damages because Plaintiffs were led to believe they had no recourse but to assemble the Midland Goods.

### F. DTPA Statement 6

66. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

67. Defendant took advantage of Plaintiffs' lack of ability and/or capacity to a grossly unfair degree by canceling the order for the Line-Item Goods. The act was to Plaintiffs' detriment because Plaintiffs did not receive the Line-Item Goods.

68. The unconscionable action constituted a producing cause of Plaintiffs' damages because Plaintiffs did not receive all the Contract Goods.

### G. DTPA Statement 7

69. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

70. Defendant took advantage of Plaintiffs' lack of ability and/or capacity to a grossly unfair degree by listing the Barstools as delivered in the Service Order. The act was to Plaintiffs' detriment because Plaintiffs did not receive the Barstools.

71. The unconscionable action constituted a producing cause of Plaintiffs' damages because Plaintiffs did not receive all the Contract Goods.

### H. DTPA Statement 8

72. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

73. Defendant took advantage of Plaintiffs' lack of knowledge, ability, and/or capacity to a

grossly unfair degree by notifying ACIMA that Plaintiffs had received all Contract Goods. The act was to Plaintiffs' detriment because, unknown to Plaintiffs and without their consent, Defendant canceled the order for the Line-Item Goods.

74. The unconscionable action constituted a producing cause of Plaintiffs' damages because ACIMA began to bill Plaintiffs for payments on all Contract Goods when it was notified that Plaintiffs had received all Contract Goods.

### I. DTPA Statement 9

75. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

76. Defendant took advantage of Plaintiffs' lack of knowledge, ability, and/or capacity to a grossly unfair degree by notifying ACIMA that Plaintiffs had received all Contract Goods. The act was to Plaintiffs' detriment because, unknown to Plaintiffs and without their consent, Defendant listed the Barstools as delivered in the Service Order.

77. The unconscionable action constituted a producing cause of Plaintiffs' damages because ACIMA began to bill Plaintiffs for payments on all Contract Goods when it was notified that Plaintiffs had received all Contract Goods.

### J. DTPA Statement 10

78. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

79. Defendant took advantage of Plaintiffs' lack of ability and/or capacity to a grossly unfair degree by failing to inform ACIMA that Plaintiffs had not received all Contract Goods, despite Plaintiffs' request for Defendant to do so. The act was to Plaintiffs' detriment because ACIMA would not stop billing Plaintiffs for all Contract Goods unless Defendant informed ACIMA that

Plaintiffs had not received all Contract Goods.

80. The unconscionable action constituted a producing cause of Plaintiffs' damages because ACIMA continued to bill Plaintiffs for all Contract Goods.

### K. DTPA Statement 11

81. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

82. Defendant took advantage of Plaintiffs' lack of ability and/or capacity to a grossly unfair degree by forging Kent Goodgion's signature on the Service Order. The act was to Plaintiffs' detriment because Kent Goodgion did not agree that he received the Midland Ashley Goods in good order.

83. The unconscionable action constituted a producing cause of Plaintiffs' damages because the Midland Ashley Goods were poorly manufactured and damaged.

### L. DTPA Statement 12

84. The Plaintiffs were consumers because they were individuals who sought to acquire the Contract Goods by purchase.

85. Defendant took advantage of Plaintiffs' lack of ability and/or capacity to a grossly unfair degree by forging Kent Goodgion's signature on the Service Order. The act was to Plaintiffs' detriment because Kent Goodgion did not agree that he received the Midland Ashley Goods in good order.

86. The unconscionable action constituted a producing cause of Plaintiffs' damages because Defendant relied on Kent Goodgion's forged signature in its representation to ACIMA that Plaintiffs had received all Contract Goods.

**Claim 2:   Breach of Contract**

87. For a breach of contract claim under Texas law, a plaintiff must show: (1) the existence of a valid contract; (2) that plaintiff performed or tendered performance; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of that breach.[8]

88. There was a valid contract between Plaintiffs and Defendant for the purchase and delivery of the Contract Goods.

89. Plaintiffs performed under the contract when they paid Defendant six thousand eight hundred forty-five and 91/100 dollars ($6,845.91).

90. Defendant breached the contract, including but not limited to failing to deliver the Contract Goods, failing to assemble the applicable Contract Goods, and failing to provide Plaintiffs with the Missing Ashley Goods.

91. Plaintiff sustained damages as a result of Defendant's breach, including but not limited to loss in value of Defendant's performance and cost of mitigation.

**Claim 3:   Fraudulent Inducement**

92. For a fraudulent inducement claim under Texas law, the elements of fraud must be established as they relate to an agreement between the parties.[9] The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied

---

[8] *Zurich Am. Ins. Co. v. Centex Corp.*, 373 F. Supp. 3d 692, 696 (N.D. Tex. 2016).
[9] *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013) *citing Bohnsack v. Varco*, LP, 668 F.3d 262, 277 (5th Cir.2012) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex.2001).

on the representation; and (7) the representation caused the plaintiff injury.[10]

93. On April 9, 2021, at the Lubbock store, Alexander made a representation to Plaintiffs that Defendant delivered Goods approximately two (2) to six (6) weeks after the date of purchase. The representation was material because it was important to Plaintiffs that Goods would be delivered to them approximately two (2) to six (6) weeks after the date of purchase if they contracted with Defendant for the purchase of Goods. The representation was false because it was misleading; the timeframe of approximately two (2) to six (6) weeks after the date of purchase was "only a guideline" — the actual delivery time "may vary." See **Exhibit B**. When Alexander made the representation, he made the representation recklessly and without knowledge of its truth because the Contract states that the two (2) to six (6) week time frame was "only a guideline" and the actual delivery time "may vary." Alexander made the representation with the intent that Plaintiffs contract with Defendant for the purchase of Goods. Based on the representation, Plaintiffs entered into the Contract with Defendant. The representation caused Plaintiffs' injury, because the Contract Goods were not delivered approximately two (2) to six (6) weeks after the date of purchase.

**Claim 4:   Texas Theft Liability Act**

94. For a Texas Theft Liability Act (TLA) claim, a plaintiff must show: (1) the plaintiff had a possessory right to the property; (2) the defendant unlawfully appropriated property in violation of certain sections of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft.[11]

---

[10] *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 582 (N.D. Tex. 2013) *citing Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir.2010) (*citing Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001)).

[11] *Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-076-H, 2021 WL 1399296, at *4 (N.D. Tex. Feb. 1, 2021), appeal dismissed, No. 21-10360, 2021 WL 4783337 (5th Cir. June 11, 2021) citing Tex. Civ. Prac. & Rem. Code §§

95.  A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of property.[12] Appropriation occurs when a party brings about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or to acquire or otherwise exercise control over property other than real property.[13] Appropriation is unlawful if it is without the owner's effective consent.[14]

96.  Intent to deprive means intent to withhold property from the owner permanently or for so extended a period of time that a major proportion of the property is lost to the owner or to dispose of property in a manner that makes recovery of the property by the owner unlikely.[15] Intent to deprive is considered at the time of the taking.[16] Absent a direct admission, intent is typically inferred from circumstantial evidence such as the words and acts of the person.[17]

97.  Plaintiffs had a possessory right to the Barstools because they had title to the Barstools.

98.  Defendant unlawfully appropriated the Barstools; in other words, without Plaintiffs' effective consent, Defendant exercised control over the Barstools. Namely, Plaintiffs never consented for Defendant to possess the Barstools after Plaintiffs picked up the Midland Ashley Goods.

99.  Defendant unlawfully appropriated the Barstools with the intent to deprive Plaintiffs of the Barstools. Defendant's intent to dispose of the Barstools in a manner that made recovery of the

---

134.002(2), 134.003; Tex. Penal Code § 31.03(a).

[12] *Vestas-Am. Wind Tech., Inc.*, 2021 WL 1399296, at *4 *citing* Tex. Penal Code § 31.03(a).

[13] *Vestas-Am. Wind Tech., Inc.*, 2021 WL 1399296, at *4 *citing Bynari, Inc. v. Alt-N Techs., Ltd.*, No. 3:08-CV-242-L, 2008 WL 4790977, at *4 (N.D. Tex. Oct. 24, 2008); Tex. Penal Code Penal § 31.01(4).

[14] *Vestas-Am. Wind Tech., Inc.*, 2021 WL 1399296, at *4 *citing* Tex. Penal Code § 31.03(b)(1).

[15] *See Vestas-Am. Wind Tech., Inc.*, 2021 WL 1399296, at *4 *citing* Tex. Penal Code § 31.01(2)(A); Tex. Penal Code § 31.01(2)(C).

[16] *Vestas-Am. Wind Tech., Inc.*, 2021 WL 1399296, at *4 *citing McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 906 (Tex. App.—Dallas 2014, pet. denied).

[17] *Vestas-Am. Wind Tech., Inc.*, 2021 WL 1399296, at *4 *citing McCullough*, 435 S.W.3d at 906; *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and ... conduct.").

Barstools by the Plaintiffs unlikely is evidenced by Defendant's forgery of Kent Goodgion's signature on the Service Order to indicate that he agreed that he received the Barstools.

100. As a result of Defendant's actions, Plaintiffs never received the Barstools.

## PRAYER

101. Plaintiff incorporates by reference all of the foregoing.

102. Plaintiff, in accordance with the foregoing, prays to this Honorable Court to grant Plaintiff the following remedies for damages incurred by Defendant's actions and omissions as herein described:

**Request for Relief Pursuant to Deceptive Trade Practices Act**

103. If defendant's conduct was committed knowingly, the consumer may recover economic damages, damages for mental anguish, and not more than three times the amount of economic damages.[18]

104. "Knowingly" means, at the time it occurred, defendant had actual awareness of (a) "false, misleading, or deceptive acts or practices," (b) breach of the express or implied warranty, or (c) unconscionable action or course of action.[19]

105. The conduct that Defendant committed knowingly includes, but is not limited to, the acts or practices detailed in the DTPA Statements.

106. Plaintiff sustained the following damages as a result of Defendant's violation of the DTPA:

    a. Out-of-pocket or Benefit-of-the-bargain;

    b. Mental anguish;

---

[18] Tex. Bus. & Comm. Code § 17.50(b)(1).
[19] *See* Tex. Bus. & Comm. Code § 17.45(9).

    c. Multiple damages for a knowing violation of the DTPA;

    d. Pre and Post judgment interest;

    e. Court costs; and

    f. Reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs, including all fees necessary in the event of an appeal.[20]

**Request for Relief Pursuant to Breach of Contract**

107. Plaintiff sustained the following damages as a result of Defendant's Breach of Contract:

    a. Expectancy damages; and

    b. Cost of mitigation

**Request for Relief Pursuant to Fraudulent Inducement**

108. Plaintiff sustained the following damages as a result of Defendant's Fraudulent Inducement:

    a. Benefit-of-the bargain damages, including benefit of enforceable contract; and

    b. Consequential damages:

        i. Cost of delay in performance;

        ii. Cost of mitigation; and

        iii. Cost of substitute performance.

**Request for Relief Pursuant to Texas Theft Liability Act**

109. Plaintiff sustained the following damages as a result of Defendant's TLA Violation:

    a. Market value or Replacement value of the Barstools;

    b. Additional damages in the amount of $1,000.00[21];

---

[20] Tex. Bus. & Comm. Code § 17.50(d)
[21] *See* Tex. Civ. Prac. & Rem. Code § 134.005(a)(1)

   c. Exemplary damages[22];

   d. Pre and Post judgment interest;

   e. Court costs; and

   f. Reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs, including all fees necessary in the event of an appeal.[23]

                                  Respectfully submitted,

                                  **MATTHEW HARRIS LAW, PLLC**
                                  1001 Main Street, Suite 200
                                  Lubbock, Texas 79401-3309
                                  FrontDesk@MatthewHarrisLaw.com
                                  Tel: (806) 702-4852 | Fax: (800) 985-9479

                                  _/s/ Carrie Harris_
                                  Carrie A. Harris, Esq.
                                  State Bar No. 24094705
                                  Attorney for Plaintiffs

### Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Federal Rules of Civil Procedure on April 11, 2022, in the manner indicated below.

                                  _/s/ Carrie Harris_
                                  Carrie A. Harris, Esq.

*Attorney for Defendant*
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Matthew P. Gizzo
8117 Preston Road, Suite 500
Dallas, TX 75225
matthew.gizzo@ogletreedeakins.com
Tel: (214) 987-3800 | Fax: (214) 987-3927
**Via ECF**

---

[22] *See, e.g., McCullough v. Scarbrough, Medlin & Associates, Inc.*, 435 S.W.3d 871, 912 (Tex. App.—Dallas 2014, pet. denied)
[23] Tex. Civ. Prac. & Rem. Code § 134.005(b)

Goodgion v. The Dufresne Spencer Group, LLC; 5:22-CV-00002-C
Plaintiffs' First Amended Complaint                                  Page **19** of 19